*P. C. Sullivan*, Asst. U. S. Atty.
*Garvey & Smith*, for defendant.

---

OAKES *v.* TONSMIERRE *et al.*

(*Circuit Court, S. D. Alabama.* June Term, 1883.)

1. TRADE-MARKS—TRANSFER—FRAUD ON PUBLIC.

The firm of Probasco & Oakes manufactured and sold candies under the name of "Excelsior Candies," but, finding this name unsatisfactory, afterwards called their goods "Oakes' Candies." Oakes sold out to Probasco, including in the bill of sale the right to use this name. He then entered the employ of Probasco, and continued therein several years, superintending the making of the candies, during which time Probasco devised and used a trade-mark consisting of two oak trees, with the words "Oakes' Candies" printed across them. Oakes subsequently quit Probasco's service, and several years later the latter sold the business, together with the right to use the trade-mark. *Held* that, as the trade-mark was used to denote candies made by the firm and was not a guaranty that they were made by Oakes personally, the use thereof was not a fraud on the public, and the sale of the right thereto was valid.

2. SAME—BONA FIDE PURCHASER.

The bill of sale by Oakes to Probasco stipulated that the right to use the name "Oakes' Candies" should cease on a sale of the business by Probasco to a stranger, and should then revert to Oakes; but the purchaser from Probasco was not aware of this condition. *Held* that, being a *bona fide* purchaser, he was not bound thereby.

3. SAME.

As the *bona fide* purchaser had good title to the trade-mark, he could convey it to another, even though the latter had notice of the stipulation.

4. SAME—PERSONAL DESIGNATION.
    The purchasers, however, had no right to use the name "Peter Oakes" in the sale of their candies, and were liable to account for the profits of such sales, even though the use was by mistake and inadvertence.

In Equity. Suit by Peter Oakes against Henry Tonsmierre and John Craft to enjoin the use of a trade-mark.

*Harry Pillans* and *E. S. Russell*, for complainant.

*W. S. Lewis* and· *Stephens Croom*, for defendants.

BRUCE, District Judge. The evidence shows that Peter Oakes, complainant, and one Hiram S. Probasco, in December of the year 1865, in St. Louis, Mo., entered into a copartnership for the manufacture and sale of candies, under the firm name of Probasco & Oakes. This firm first called their candies "Excelsior Candies," but, as Probasco testified, they found this name too long, hard to be remembered, and not easily spoken by children, and they changed the name to "Oakes' Candies," "Oakes' Home-Made Candies," and "Oakes Pure Home-Made Candies." This firm of Probasco & Oakes carried on the business of making and selling candies up to May 17, 1869, when Peter Oakes, for a valuable consideration, sold out to his partner, Probasco. The bill of sale is in evidence, and, to quote the language, the transfer is of—

"All my right, interest, and estate, it being one-half, in and to the stock of candies, materials, goods, wares, and merchandise, fixtures, furniture, tools, and equipments of the firm of Probasco & Oakes; also the good-will of the business, and name of the firm of Probasco & Oakes, and the exclusive right to make and sell 'Oakes' Candy,' and to use the name thereof."

On the same date another memorandum of agreement was made, which is also in evidence, by which Oakes agreed to work for Probasco, and Probasco agreed to employ him for two years, at wages therein specified, at manufacturing home-made candies, or at any work necessary to be done or properly appertaining to the business of candy-making; and in this memorandum it is provided that—

"Should he, Probasco, sell out his said business of candy making and selling within said two years, or at any other time, then said Oakes shall be relieved from all obligations under this agreement, and the right and privilege of making and selling 'Oakes' Candies' and of using said name shall revert to said Oakes."

Probasco continued the business after the dissolution of the firm, and in addition to the word "Oakes," or the words "Oakes' Candies," in 1870 he devised a trade-mark of two oak trees, with the word "Oakes" across the branches, and the word "Candies" on a plank across the trunks of the trees; and used this trade-mark or symbol in his store, and upon labels placed upon packages and boxes of candies offered and sold in the market. He continued this business and use of the trade-mark after Oakes sold out to him, and after Oakes had quit his employment, which continued after the sale for 18 months, when Oakes left Probasco's employment, by mutual consent, as he states.

In January, 1877, over seven years after the sale from Oakes to Probasco, Probasco sold out to one W. J. Hammon, for a valuable consid-

eration, and in May afterwards transferred in writing, which is in evidence, "the trade-mark, name, good-will, and reputation connected with the manufacture, production, and sale of certain candies, * * * commonly known as 'Oakes' Candies.'" W. H. Hammon carried on the business until the 25th of March, 1878, when he sold out to H. Skinner and N. C. Skinner, who carried on business as Skinner & Co., and who constituted Tonsmierre & Craft, the defendants herein, their agents in Mobile, Ala., for the sale of Oakes' candies, made by Skinner & Co., of St. Louis, Mo. Tonsmierre & Craft received candies from Skinner & Co. of St. Louis, advertised and sold them as the genuine Oakes' candies, and their advertisement sometimes stated that the Oakes' candies were made by Skinner & Co. of St. Louis, and sometimes not, and sometimes only stated that Tonsmierre & Craft were the agents for the sale of the genuine Oakes' candies.

Complainant prays for an injunction against the defendants—

"To restrain them from selling or offering for sale * * * any kind of candies or caramels as 'Oakes' Candies,' or to use in any way the name or trade-mark of Oakes', or simulate the same in connection with the manufacturing, selling, or offering for sale * * * any candies or caramels as 'Oakes' Candies,' except such as may be manufactured by and purchased from Peter Oakes; and that Tonsmierre & Craft be ordered and decreed to account to Peter Oakes for all the profits which they have made, * * * and all the profits which Peter Oakes could or would have made, on the sales of his genuine candies and caramels; and the prayer is for general relief."

The right of the defendants to use the trade-mark in question, which combines the word or name "Oakes" with the two oak trees, and their right to represent and advertise themselves as the agents for the Oakes' candies in the market here in Mobile, depends upon the right of Skinner & Co., of St. Louis, to use this trade-mark and the name "Oakes," and their right depends upon the right of W. J. Hammon, from whom they purchased it, and their right in turn depends upon the right of Hiram S. Probasco, from whom he purchased. What right, then, had Probasco to use the trade-mark in question,—either to use the name or word "Oakes" alone, or in combination with any other mark or device, in the sale of the candies made by him? The general principle is that one man will not be permitted, by imitating the distinctive name or mark used by another person to designate articles of the latter's manufacture, to impose articles of his own manufacture on the public as the articles of the former. The cases so holding rest upon two considerations: (1) That it would be a fraud on the rights of the former person thus to permit this trade-mark to be imitated; (2) that it would be a fraud on the public. *Skinner v. Oakes*, 10 Mo. App. 45, and cases there cited. See, also, *McLean v. Fleming*, 96 U. S. 245. The courts proceed upon the twofold principle that the public have a right to know that goods which bear the signature or mark of a particular manufacturer or vendor are in fact the goods of such manufacturer or vendor, and that the manufacturer or vendor of such goods had a right to any advantage which

might accrue to him from the public knowing that fact. Same authority and cases cited.

The evidence shows that Peter Oakes was a particular candy-maker, that he superintended the making of the candies of his firm during its existence; and perhaps it is only fair to infer from the testimony that he continued to do so after he sold out to his partner, and during the 18 months after the sale that he remained in his employ. It does not appear, however, that the candies made and sold by Probasco & Oakes at their place of business in St. Louis, Mo., were called "Oakes' Candies" because the man Peter Oakes made or superintended the making of them, but it is shown by the evidence that the reason why these candies were called "Oakes' Candies" was because the name was deemed by the firm a proper one to designate their candies. They were first called "Excelsior Candies," but this was a difficult name for children to speak, and "Oakes" was deemed the better name. Probasco was not a particular candy-maker, yet he was the business man of the concern, and most probably had as much or more to do with building up the reputation of the candies manufactured by this firm as had his partner, Peter Oakes. The evidence on this subject I think repels the idea that the candies of this firm were called "Oakes' Candies" because Peter Oakes manufactured them, or that the use of the name was intended to be any guaranty to the public that Peter Oakes actually manufactured or superintended the manufacture of them.

This case, then, does not fall within the rule that one man is not permitted to use the trade-mark of another, for the use of the word "Oakes" was as much the device of Probasco as it was of Peter Oakes, and the more elaborate mark of the two oak trees, with the words "Oakes' Candies," was the device of Probasco alone.

In the case of *Skinner* v. *Oakes, supra,* it is said to be settled law that the right to use a trade-mark is not a mere personal privilege, but within certain limits it is capable of being bought and sold as other property. "A trade-mark," says Justice STRONG, "like the good-will of a store or manufacturing establishment, is a subject of commerce, and it has been many times held to be entitled to protection at the suit of vendors." *Fulton* v. *Sellers,* 4 Brewst. 42, and other authorities. See, also, *Kidd* v. *Johnson,* 100 U. S. 617.

In the same case, however, (*Skinner* v. *Oakes,*) the court proceeds: "But when the trade-mark consists of a name, how far is it capable of assignment? is a more difficult question." It is a name that we are dealing with here, and I cannot do better than to give the answer which the court gave in that case to the query which is propounded. The court said:

"We think the answer to this question depends upon the effect which the use of the name, in each particular instance, is shown to have upon the minds of the public. If it leads the public to believe the particular goods are in fact made by the person whose name is thus stamped upon them, or in whose name they are advertised, whereas they are in fact made by another

person, then such a use of the name will not be protected by the courts, for to do so would be to protect the perpetration of a fraud upon the people."

Tested by this rule, what is there to show that the use of the name or word "Oakes" by Probasco in the sale of his candies implied, or was calculated to imply, any guaranty to the public that the candies were made by Peter Oakes? While Peter Oakes was a member of the firm, it might be a reasonable inference on the part of the public that he made the candies; but after he sold out to Probasco, and after Probasco had devised and used in his business the more elaborate trade-mark of the two oak trees with the words "Oakes' Candies" upon them, and this had been continued for years after Peter Oakes had ceased all connection with the business carried on by Hiram S. Probasco, how could such use of the name "Oakes" lead the public to believe that the goods were made by the man Peter Oakes? On the contrary, it is but common experience that articles bearing a particular name are not regarded by the public as being the actual manufacture of the person whose name they bear. It may have been so originally, for it is only natural that the article should be associated with and called by the name of its first maker or vendor; but, generally speaking, unless in cases of inventions or articles produced by special skill, which are usually protected by letters patent, the public do not in fact think and are not justified in the conclusion that, because articles bear a particular name, the person of that name is in fact the manufacturer or vendor of the article. The principle contended for here by the complainant goes to the extent that Probasco, after the sale by Oakes to him, had no right to use the name of "Oakes" as a trade-mark, because by doing so he was perpetrating a fraud upon the public, holding out the idea that Oakes actually manufactured the candies which he, Probasco, made and sold, when such was not the fact. But this view of the subject cannot be maintained, and was not maintained in the case of *Probasco* v. *Bouyon*, 1 Mo. App. 241, in which case the court say:

"By the dissolution of the firm, and Oakes' sale to Probasco, the latter acquired the rights of his firm to the name. Oakes could so sell his name as to deprive himself of the right to use it for his own manufacture, and give that right to another."

The court in this case holds that a trade-name may be the subject of a sale; that the name of Oakes was the subject of a sale by Peter Oakes to Probasco; but the court could not so have held if the use of the name "Oakes" carried with it an assurance to the public that the man Oakes manufactured the candies, for that would have been to protect Probasco in perpetrating a fraud upon the public. So that it is clear that Probasco's right to make and sell Oakes' candies did not at all depend upon the fact that Oakes made the candies. The case falls within another principle, which is that a name may be used as a mere adjective of description or quality, which the public do not understand as any warranty that the person whose name is used is the maker of the article; and in these cases the right to use the name may be sold with the right

to manufacture and vend the goods, without reference to the question as to what person or persons actually manufacture them.

But it is claimed that, though Probasco had the right to carry on the business and use the trade-name in question, yet he had no right to sell it, because he had agreed with Oakes in 1869 that should he, Probasco, "sell out his business within two years, or at any other time, * * * then the right and privilege of making and selling Oakes' candies, and of using said name, shall revert to said Oakes." It may well be questioned if this agreement meant anything more than that, upon a sale by Probasco of his business, Oakes was then to have an equal right with Probasco's vendee to the use of the name "Oakes" in the manufacture and sale of candies; but if that admits of doubt, still can it be doubted that a subsequent purchaser for value, without notice of this private agreement between the parties, would acquire the right to use the trade mark or name here in question? Probasco was carrying on the business of manufacturing and selling candies, and advertising and designating them by a trade-mark, consisting in part of the name "Oakes," and he was in the open possession and enjoyment of this trade-mark. The great mark of ownership of personal property is possession, and contracts that the title to personal property shall be in one party and the possession in another cannot be set up to the prejudice of a *bona fide* purchaser without notice. In 1877 Probasco sold out to W. J. Hammon for $4,000, and on May 17th executed in writing a transfer of the trade-mark, name, good-will, and reputation connected with the manufacture, production, and sale of certain candies. commonly known as "Oakes' Candies." Here, then, was a sale of the business and trade-mark for value to one Hammon, who had the right to purchase, and who is not shown to have had any notice of the agreement between Oakes and Probasco, which was a private one, never placed upon record, and which, therefore, could not affect the rights of Hammon.

It is claimed that in August, after the sale to Hammon, notice was served upon both Skinner and Hammon of this agreement of Oakes and Probasco; but, even if Skinner & Co. had notice, they would be entitled to defend themselves behind Hammon's want of notice. Sugd. Vend. 531; *Boone* v. *Chiles*, 10 Pet. 177. Again, it is claimed that the case of *Skinner* v. *Oakes, supra,* shows that the complainant is entitled to recover in this suit. True, in that case the complainants failed to maintain their bill in the court of appeals of Missouri, but an examination of the opinion shows the reason for such failure. The court says:

"If we could gather from the record that the plaintiffs are the successors in business of Probasco & Oakes, that they had become the assignees, not merely of the trade-marks and tokens, but also of the establishment and the business, so that they are really carrying on the same business, and manufacturing and selling the same goods, as Probasco & Oakes, we would have no difficulty in holding that they are entitled to the relief which the court below awarded them."

In the case at bar the evidence shows that Skinner & Co. were the successors in business of Hiram S. Probasco, who succeeded the firm of Probasco & Oakes. Hammon testifies that he succeeded to the business, making no changes in the methods of manufacturing and selling the candies, and did it for a considerable time at the same shop and number in St. Louis at which Probasco had carried on the business. I see nothing unreasonable or impossible in this. If there was anything in the nature of the business of candy-making,—any art or incommunicable secret,—known only to the man Oakes, it might be said that Skinner & Co. and Hammon, and even Hiram S. Probasco, did carry on the same business and manufacture the same goods as did the firm of Probasco & Oakes. But the proof shows that the quality of the candies of Probasco & Oakes consisted not only in the skill of Oakes as a candy-maker, but in the use of fine sugars, nuts, and flavors; and the weight of the testimony is that the Oakes' candies manufactured and sold by Skinner & Co. were quite equal, if not superior, in quality to those manufactured by Peter Oakes.

The result of these views is that Skinner & Co. had a right, derived as shown in the evidence, to the use of the trade-mark in question, and that the respondents, Tonsmierre & Craft, as their agents in Mobile, had such right, and the relief prayed against them by the complainant on account of their use of the word or name "Oakes" is denied.

The use, however, of the name "Peter Oakes" stands upon different principles, and it is not claimed by counsel that they had any right to use this name, but that it was used by reason of an inadvertence or mistake, was not intentional, and, in point of fact, it was used to a very limited extent. The rule, however, is that trade-marks are protected, not exclusively on the ground of fraud, but also on the ground of property. The testimony shows that Peter Oakes is making and selling candies in his own name, and designating them in the market by the name of "Peter Oakes;" so that, if insisted upon, the case may go to a master for an account of gains and profits, on account of the unauthorized, though not intentional and fraudulent, use by respondents of the name of Peter Oakes.