ATLANTIC BASIN IRON WORKS, Respondent, *v.* THE AMERICAN INSURANCE COMPANY et al., Appellants.

(Argued January 14, 1929; decided February 13, 1929.)

*Paul Speer* and *James M. Gorman* for appellants. The insurer and insured intended that the insurance risk should be covered by the typewritten page only. (Arnould on Marine Ins. [11th ed.] 100; *Dudgeon* v. *Pembroke*, L. R. [2 App. Cas.] 284; *Cunard S. S. Co.* v. *Marten*, 2 K. B. [1902] 624; *Western Assurance Co.* v. *Poole*, 1 K. B. [1903] 376; *Hagan* v. *Scottish Union & Nat. Ins. Co.*, 186 U. S. 423; *Borland* v. *Standard Marine Ins. Co.*, 125 Misc. Rep. 395; *Queen Ins. Co.* v. *Globe & Rutgers Fire Ins. Co.*, 263 U. S. 487; *Marine Ins. Co.* v. *McLanahan*, 283 Fed. Rep. 240; 290 Fed. Rep. 685; *Pennsylvania Co. for Insurance* v. *Central Trust & Savings Co.*, 255 Penn. St. 322; *Bushey & Sons* v. *American Ins. Co.*, 237 N. Y. 24; *Kratzenstein* v. *Western Assurance Co.*, 116 N. Y. 54.) The " interest of the assured in work " on vessels in the extended insurance of the type-written page and the words " if the assured by reason of his interest in the insured ship " pay damages, etc., in the printed protection and indemnity clause, did not make the insurer liable for the damages suffered by the *Dixie*. (*The Bjornefjord*, 271 Fed. Rep. 682; *Flint* v. *Robins Dry Dock & Repair Co.*, 13 Fed. Rep. [2d] 3; *The Montserrat*, 7 Fed. Rep. [2d] 477; 15 Fed. Rep. [2d] 1015; *The Alert*, [C. C. A. 2] 19 Fed. Rep. [2d] 286; *The Satilla*, 221 Fed. Rep. 949; 235 Fed. Rep. 58; *International M. M.*

*Co.* v. *Gaffney,* 143 Fed. Rep. 305; *The Cromwell,* 247 Fed. Rep. 207; 259 Fed. Rep. 166; *Sturm* v. *Atlantic Mutual Ins. Co.,* 63 N. Y. 77.)

*Le Roy Mandle, H. A. Heydt* and *C. E. Heydt* for respondent. The intent of the parties as expressed by the policy including the typewritten page attached thereto clearly contemplated the coverage of the plaintiff's legal liability for loss to other ships occasioned by work done on the ships upon which assured was engaged. (*Bushey & Sons* v. *American Ins. Co.,* 237 N. Y. 24.) An insurance policy should be so constructed as to give effect to every word and expression contained therein unless there be an irreconcilable conflict in the terms used. (1 Arnould on Marine Insurance [11th ed.], § 56; *Kratzenstein* v. *Western Assurance Company,* 116 N. Y. 54; *Benedict* v. *Ocean Insurance Co.,* 31 N. Y. 389; *Chadney* v. *Guion,* 97 N. Y. 333; *Dudgeon* v. *Pembroke,* L. R. [2 App. Cas.] 284; *Western Insurance Co.* v. *Poole,* [1903] [1 K. B.] 376; *Hagan* v. *Scottish Union & National Ins. Co.,* 186 U. S. 423; *Marine Insurance Co.* v. *McLanahan,* 290 Fed. Rep. 685; *Foot* v. *Ætna Ins. Co.,* 61 N. Y. 571; *Harper* v. *Albany Mutual Ins. Co.,* 17 N. Y. 194; *Nelson* v. *Sun Mutual Ins. Co.,* 71 N. Y. 453; *Tillitt* v. *Mann,* 104 Fed. Rep. 421; *Hawkeye Com. Men's Assn.* v. *Christy,* 294 Fed. Rep. 208; *Maryland Casualty Co.* v. *Bank of England,* 2 Fed. Rep. [2d] 793; *Federal Life Ins. Co.* v. *Kemp,* 257 Fed. Rep. 265; *Canton Ins. Office* v. *Independent Trans. Co.,* 217 Fed. Rep. 213.) The insured had an insurable interest in the insured ship. (*Cane* v. *Niagara Fire Ins. Co.,* 60 N. Y. 619; *Bushey & Sons* v. *American Insurance Co.,* 237 N. Y. 24.)

CRANE, J. The Atlantic Basin Iron Works is a domestic corporation engaged in the business of repairing ships. On or about the 16th day of May, 1922, it was at work through its agents and servants repairing the steamship *Monterey* at pier No. 13, borough of Brooklyn, county of

Kings, city and State of New York. While the work was in progress, the lighter *Dixie*, with a cargo of jute on board, was brought alongside of the steamship *Monterey;* the jute took fire and the lighter, its appurtenances, equipment and cargo were damaged.

Shortland Bros. Co., a Virginia corporation, and the owner of the said lighter and cargo, filed a libel in the United States District Court for the Eastern District of New York against the Atlantic Basin Iron Works to recover its loss, which was alleged to be due to the negligence of the repairmen. After a trial, it was adjudged that the servants of the Atlantic Basin Iron Works had been negligent in allowing sparks from an acetylene torch which they were using to fall in the lighter and cargo, causing the fire. Damages were assessed, which the Atlantic Basin Iron Works was obliged to pay.

Marine insurance policies had been issued to the Atlantic Basin Iron Works covering certain risks. The iron works claim that its liability for the fire damage to the lighter was one of the risks covered by the policies; the insurance companies claim that the policies covered no such risk. For a determination of this question the controversy was submitted to the Supreme Court on stipulated facts, after pleading. The Trial Term justice found for the defendants; the Appellate Division reversed and gave judgment for the plaintiff. The difference in the result was due entirely to the construction placed upon the contract of insurance; outside of this there is no question of law involved.

What was the contract of insurance between the parties? The difficulty in answering this question arises out of the practice of annexing to the standard form of marine insurance policy a rider or statement of the extended risks covered, to and about which the printed clauses in the standard form have little or no application. The coverage clauses in the typewritten sheet annexed to the standard form printed policy are quite clear of applica-

tion; the plaintiff's claim, however, has been thus far established by reason of certain sentences in the "Clauses for Builders' Risks" contained in the printed form.

The insurance contract must be found in the papers read as a whole. There is no inconsistency between the written and printed matter; if any part of the papers cover or apply to this risk the plaintiff must recover. The printed form, however, does not seem to refer to this liability.

There are three papers fastened together forming the contract. The seven insurance companies in the first paper insure the Atlantic Basin Iron Works in the amount of $150,000 "upon the good legal liability from the 19th day of July, 1921, to the 19th day of July, 1922."

The second paper is typewritten, and states what the "good legal liability" applies to. It reads as follows:

"$150,000. To cover the LEGAL LIABILITY of the assured from any cause whatsoever for loss and/or damage and/or expense, if any, to vessels and/or craft and/or their cargoes and/or their freight, (which may be in their hands for or on which they may be engaged or preparing to engage in work or operations) arising from or in connection with the operation of their plant situated at (Brooklyn) New York City including work on or in connection with vessels anywhere in New York Harbor and/or adjacent inland waters of New Jersey, Hudson and/or East Rivers whether on dry docks and/or Marine railways operated by others or otherwise, but excluding any liability hereunder for loss or damage for which the owner or owners of such other dry docks and/or marine railways may be liable. * * *

"This insurance is also extended to cover, subject to the terms of the Builders Risks Clauses as attached, the interest of the assured in work on such vessels completed or in process of completion."

The third paper is the standard printed marine insurance policy to which the other two are attached.

Legal liability is a very broad term. The Atlantic

Basin Iron Works might be legally liable on its contracts, or for the torts of its servants, or the frauds of its officers. The whole realm of law may be pressed into the term " legal liability." We must, therefore, expect to find in these insurance papers some limitation of " legal liability," or some definite application of the term. We find it in the second typewritten paper which I have quoted above. The legal liability which is covered is that liability for loss or damage caused to the vessel which the Atlantic Basin Iron Works is repairing or has under its possession and control. As before stated, the iron works was in the business of repairing ships. It had the steamship *Monterey* at the pier undergoing repairs. Its men were at work upon the ship. For any damage done by the men to the ship or any loss occasioned to the ship by reason of the negligence or carelessness of the iron works and for which it was liable, the insurance companies undertook to indemnify it; they insured against such loss.

The second clause, above quoted, from the typewritten sheet or coverage paper, has reference to another loss. The iron works was putting its labor and material into the ship. What its contract price was does not appear, but evidently it was doing the work for hire. The ship might sink, blow up or catch fire before the iron works had received full compensation. Against such a contingency it insured by the clause which says that the insurance is extended to cover the interest of the assured in work on such vessel completed or in process of completion.

I cannot find in these three papers any other clause to which the legal liability of the insured extends, or any other risk which is covered. The standard form printed marine insurance policy, which is the third paper, to which the other two are annexed, refers to the insuring of ships; to losses to the hurt, detriment and damage " of the said ship." All of the clauses in this printed policy cover the loss or damage which may be occasioned to the ship. They also cover damage done by the ship

or for which the owner or the assured may be liable because of his interest in the ship. I do not see how these risks insured against can be extended to cover the liability of a contractor or repair worker not owning the ship for the negligence of its servants, causing damage to another ship or vessel, a ship upon which no repair work is being done. While such a contractor or repairman would be liable for the loss occasioned upon such second ship through the negligence of his servants, the liability would rest upon the relationship of master and servant and not upon his interest in the insured ship. He might have no interest whatever in the insured ship and yet be liable for the negligence of his servants to third parties. We may assume that the Atlantic Basin Iron Works had done so much work upon the *Monterey* that it had an insurable interest therein and that to the extent of its bill or charges, it had " an interest in the ship." Such an interest, however, which might result in a lien or libel upon the ship is not the interest referred to in the " Clauses for Builders' Risks." The liability for negligence in doing repair work resulting in damage and loss to another ship would not be a liability by reason of any such interest in the insured ship. In fact, there is no insured ship. The standard form marine policy containing the " Clauses for Builders' Risks " has very little application to the insurance here in question. The only reference to it in the second or typewritten coverage sheet is that the insurance to cover the repair bill or charge is " subject to the terms of the Builders Risks Clauses as attached." It may be that the clause in the builders' risks referring to fire while under construction and the clause including materials in buildings, workshops, yards, docks, etc., bring such within this insurance. But, as stated before, no sentence can be found in the " Clauses for Builders' Risks " covering the liability for negligence as distinguished from the liability of the ship or liability by reason of an interest in the ship.

The court below was of the opinion that the liability

of the insurance companies could be predicated upon the printed form reading:

" It is further agreed that if the Assured shall *by reason of his interest in the insured ship* become liable to pay and shall pay any sum or sums in respect of any responsibility, claim, demand, damages, and /or expenses arising from or occasioned by any of the following matters or things during the currency of this policy, that is to say:

" Loss of or damage to any other ship * * * caused *proximately or otherwise by the ship insured* * * *

" Loss of or damage to any goods, * * * whether on board the said Steamship or not, which may arise from any cause whatever * * *

" These assurers will pay the Assured such proportion of such sum or sums so paid, or, which may be required to indemnify the Assured for such loss as their respective subscriptions bear to the completed contract price of the ship hereby insured."

These clauses refer in our judgment to some proprietary interest of the assured in the ship out of which a liability has arisen for loss and damage occasioned by the ship. The fact that the Atlantic Basin Iron Works was interested in the ship to the extent of the work and material put in it did not make it liable in admiralty or at common law for the damage done to the lighter. Its liabilty was due to the negligence of its servants in doing the repair work on the ship; for this negligence neither the ship nor any one having an interest in the ship would be liable. (*Soderberg* v. *Atlantic Lighterage Corp.*, [C. C. A. 2] 19 Fed. Rep. [2d] 286; *The Cromwell*, 259 Fed. Rep. 166; *The Satilla*, 221 Fed. Rep. 949.)

I agree with the respondent that the printed paper marine insurance policy standard form is a part of the contract of insurance in so far as it can be made applicable to this case, but I cannot find any provision in this policy which covers the plaintiff's liability to third parties for the negligence of its servants. Most all of the printed

matter of the standard policy is inapplicable to this kind of insurance, but such verbiage does not justify the court in pushing words out of their setting and relationship to spell out a liability. It may be that the assured thought it had insurance to cover any and all liability for damage done by its employees, but the reading of these three papers does not so discover. We are confined to the words and sentences used and cannot make our decision on those which might have been used.

The judgment of the Appellate Division should be reversed, and that of the Trial Term affirmed, with costs in this court and in the Appellate Division.

POUND, J. (dissenting). Atlantic Basin Iron Works is a ship repairing concern. It insured itself with the defendants against " legal liability " in the sum of $150,000. This term is broad enough to cover the loss sued on, subject to the limitations contained in the policy. The standard policy of marine insurance is specifically made a part of the policy as a printed rider. The type-written rider, which covers builders' risks alone, is made " subject to the terms of the Builders' Risks Clauses " contained in the printed rider. Assured owned no ship nor interest in a ship. It had an interest in its work on vessels. The standard form in terms covers only ships or loss or damage due to an interest in a ship. Obviously, the insurers carelessly used a blank form of policy which was applicable only to hull insurance without troubling themselves to adapt it to the nature of the transaction. The printed words " upon the good " before the written words " legal liability " so indicate. The blank following the printed words would normally be filled in with the words, " ship Mary Jane," or something of the kind, descriptive of the " good ship " upon which the insurance was written. Yet the policy unquestionably insures " against legal liability " to some extent. Insurance " Upon the good legal liability," read literally, is meaningless.

The policy provides, among other things, under the head of " Protection and Indemnity Clause," as follows:

" It is further agreed that if the assured shall by reason of his interest in the insured ship become liable to pay and shall pay any sum or sums in respect of any responsibility, claim, demand, damages, and /or expenses arising from or occasioned by any of the following matters or things during the currency of this policy, that is to say: —

" Loss of or damage to any other ship or boat or goods, merchandise, freight, or other things or interests, whatsoever on board such other ship or boat caused approximately or otherwise by the ship insured in so·far as the same is not covered by the running down clause set out above."

The same carelessness is manifested here but the underlying purpose is protection and indemnity against a specified group of legal liabilities. The words should, if possible, be given a meaning and applied to the facts. When insurance companies undertake to insure a ship repairer against " legal liability " and make a standard form of policy of ship insurance a part of the contract, it must be that they have in mind some sort of protection for the assured arising therefrom. Otherwise why was not the coverage limited in terms to builders' risk? Having before us the relations of the parties, the clause may be fairly read (rejecting all superfluous words) so as to give the assured herein protection and indemnity against loss or damage to any other ship caused proximately by the assured by reason of its work on a ship in its hands. ˙ The intention of the parties is fairly expressed by the language, read in the light of the surrounding circumstances. (*Aldrich* v. *N. Y. Life Ins. Co.*, 235 N. Y. 214; *Bushey & Sons* v. *American Ins. Co.*, 237 N. Y. 24.)

The judgment should be affirmed, with costs.

CARDOZO, Ch. J., LEHMAN, KELLOGG and O'BRIEN, JJ., concur with CRANE, J.; POUND, J., dissents in opinion in which HUBBS, J., concurs.

Judgment reversed, etc.