### THE HARRY.

### THE DIXIE.

### SOELLER v. NEW YORK CANAL & GREAT LAKES CORPORATION (NATIONAL CHARTERING CORPORATION, Claimant).

#### No. 368.

Circuit Court of Appeals, Second Circuit.

April 4, 1932.

Libel filed to recover damages to the barge Harry in tow of the steam tug Dixie. Decree for libelant; the New York Canal & Great Lakes Corporation, claimant and owner of the motor vessel Herkimer, appeals. Decree modified.

Irving L. Evans and Kirlin, Campbell, Hickox, Keating & McGrann, all of New York City (J. Harvey Turnure, of New York City, of counsel), for appellant and the Herkimer.

Purdy & Purdy, of New York City (William F. Purdy and John E. Purdy, both of New York City, of counsel), for claimant of the Dixie.

Before MANTON, L. HAND, and SWAN, Circuit Judges. .

MANTON, Circuit Judge.

On May 29, 1930, the motor vessel Herkimer left the New York Barge Terminal on the north side of Gowanus Bay, bound for Constable Hook, N. J. She backed into Gowanus Bay, turned around and started down the bay. Her speed was four or five miles an hour. The weather was clear, tide low, slack water, and no wind. When she reached a point about four hundred feet above the slip on the south side of the pier at Thirty-Third street, Brooklyn, the covered barge Harry came out of the slip in tow and headed across the Herkimer's course from port to starboard. The Harry was in tow of the Dixie, on the Dixie's starboard side. When the Dixie arrived about half way up the Thirty-Third street slip, she proceeded out of the slip with her engines operated at full speed ahead, or about four knots, picking up speed all the time. The Dixie was bound for Pier 14, Jersey City, and her intended course after leaving the slip was directly across the mouth of Gowanus Bay, which is about sixteen hundred feet wide, and then into Buttermilk Channel. After entering the stream, she continued at full speed across Gowanus Bay on a course parallel to Pier 33, and this carried her at right angles to the course of the Herkimer.

After the Dixie entered the stream, the Herkimer continued on her course about half a minute, and it was then observed that the Dixie was making no effort to avoid the Herkimer, and there was danger of collision, which did occur shortly thereafter, the starboard forward corner of the Harry coming in contact with the north side of the Herkimer about abreast of No. 1 hatch. The collision is estimated to have occurred three or four hundred feet from the mouth of the slip on the south side of the Thirty-Third street pier.

There is a dispute as to the signals. The Herkimer's witnesses testified that no signals were heard from the Dixie; the Dixie claims that as she was moving up the slip she gave the slip whistle, and thereupon entered the stream and sounded a one-blast signal to a passing steam lighter which was off her port side bound up Gowanus Bay. The Dixie claims further that, when the Herkimer was heading for the Harry's midship, she sounded a two-blast signal which the Herkimer did not answer. These last signals, however, were given just a few seconds before collision.

From the facts, it is evident that the vessels were on crossing courses, and that articles 18, 19, 21, 22, and 23 of the Inland Rules were applicable (33 USCA §§ 203, 204, 206–208). Article 18, rule 5 (33 USCA § 203, rule 5), provides that, when steam vessels are moved from their docks or berth, and other boats are liable to pass from any direction toward them, they shall give the same signal as in the case of vessels meeting at a bend, but, immediately after clearing the berths so as to be fully in sight, they shall be governed by the steering and sailing rules. The Dixie's course involved proceeding across the mouth of Gowanus Bay and up Buttermilk Channel. The Dixie was not obliged to make a change of course upon entering the stream. She proceeded out of the slip and straight across the bay. When she entered the stream, her course was definitely fixed. Therefore, being on a definite and certain course, the steering and sailing Inland Rules were applicable. Under article 19, she was obliged to keep out of the way of the Herkimer, and under article 22 (33 USCA § 207) was required to avoid passing ahead of the Herkimer. Article 23 (33 USCA § 208) required her to slacken her speed or stop and reverse if necessary to avoid a collision. She did not comply with these requirements, but continued on without change of course, with her engines working full ahead, and gathered headway until the collision occurred. This clearly made her liable for the collision. Carroll v. City of New York, 249 F. 453 (C. C. A. 2); The Modoc (D. C.) 216 F. 445; The Mauch Chunk, 154 F. 182 (C. C. A. 2); The Steinway, 135 F.

344 (C. C. A. 2). It was the duty of the Herkimer to hold her course and speed, and the Dixie was obliged to keep out of the way. Instead, she maintained her speed and contributed such navigation as to be a cause for the collision. The New York, 175 U. S. 187, 20 S. Ct. 67, 44 L. Ed. 126; The Flemington (C. C. A.) 204 F. 980; The Erin (C. C. A.) 194 F. 405; The Transfer No. 10 (D. C.) 137 F. 666.

The Herkimer was navigating about three hundred feet off the pier end, and this put her on the wrong side of Gowanus Bay. If she had been operating on her proper side, she would have been about eight hundred feet from the pier end, and could have helped to avoid the collision. Her fault of navigation in this respect was one of the causes of the collision, and she too must be held liable.

The decree will be modified, and both vessels held at fault. Decree modified.