## WHEELER et al. v. ÆTNA INS. CO.
### No. 79.

Circuit Court of Appeals, Second Circuit.
Dec. 11, 1933.

Crowell & Rouse, of New York City (E. Curtis Rouse, J. Dexter Crowell, and George L. Varian, all of New York City, of counsel), for appellants.

Single, Atkins, Middleton & Tyler, of New York City (Loring R. Le Craw, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

MANTON, Circuit Judge.

Appellants built and sold motorboats, having a plant in Brooklyn, N. Y., and a factory branch, dock, and showroom at Syracuse, N. Y.; also a dock and repair shop 14 miles from Syracuse, at Brewerton, N. Y. They built a 40-foot double cabin motorboat, known as Hull 304, in the Brooklyn yard, exhibited it in January, 1930, at a motorboat show, and then launched and demonstrated it in New York Harbor until May 6, 1930, when it was prepared for a trip to Syracuse to be shown, for disposal, in appellant's factory branch. The trip was started on the evening of May 6th, but, before reaching Albany on May 7th, it stranded, causing damage to the engines and propeller. It managed to navigate to Albany, and was later taken to Watervliet, N. Y., where partial repairs were made, and then it was taken to appellants' shipyard at Brewerton for further repairs. Here one engine was removed, overhauled, and replaced, and on testing it was found to have a bad knock. After these major repairs, it was necessary to navigate the vessel to try out the engine

by running it for 30 or 40 hours at slow speed. This test was recommended by the mechanic. It was considered necessary before the boat could be demonstrated or offered for sale. At this time there were college boat races at Ithaca, and the appellants had loaned a 36-foot motorboat to the regatta committee to be available for these races. The No. 304 made its test run by accompanying the 36-footer to Ithaca. The two boats proceeded slowly, reaching Baldwinsville at the end of the first day. At that place the captain of the No. 304 took on board his wife and two friends. It was not a demonstration trip. After arrival at Ithaca, the motorboat was taken out on the lake and then back into an inlet, on May 24, 1930, to load a supply of gasoline. After loading the gasoline, the captain attempted to start the engine, and the boat blew up and became a total loss except a salvage value of about $1,000.

A policy of insurance was issued against this risk in November, 1929. Originally it was for one month, but was extended by indorsements from time to time and the payment of additional premiums. The insurance was for $11,500, and was built up by riders and indorsements on the basic form. This basic form, known as "A. I. A. Inland Vessel Form," had a rider attached known as the "Builders' Risk Form No. 50." On May 6, 1930, an indorsement was made to cover the trip from Brooklyn to Syracuse; on May 16, 1930, while the vessel was still at Brewerton, another indorsement was made extending the policy another month, and gave the same coverage as obtained while in Brooklyn. This indorsement carried the same premium as the original policy and prior indorsements for use about Brooklyn.

Among the clauses of the policy was a provision voiding the policy if any other insurance was made upon the interest insured. It was "Warranted by the assured limited to the navigation and use of the ———— as per form attached ———— Wheeler Shipyard for account of themselves * * * commencing November 12, 1929 at noon New York time and ending December 12, 1929 at noon, New York time, or until delivery at Brooklyn, New York if delivered at an earlier date. * * * this policy may be extended at pro rata monthly additional premium provided notice of extension be given to this Company prior to December 12, 1929. * * *

"Touching the adventures and perils which we, the said assurers, are contented to bear and take upon us, they are of the Seas, Man-of-War, Fire, * * * barratry of the Master and Mariners, and all other perils, losses and misfortunes that have or shall come to the hurt, detriment or damage of the said ship, &c., or any part thereof. * * * With leave to sail with or without pilots, to tow and be towed, and to assist vessels and/or craft in all situations and to any extent, and to go on trial trips. With liberty to discharge, exchange and take on board * * * passengers, and stores wherever the vessel may call at or proceed to. * * *

"This Insurance is also to cover all risks, including fire, while under construction and/or fitting out. * * *

"This insurance is also to cover all risk of trial trips, loaded or otherwise, as often as required, and all risks whilst proceeding to and returning from the trial course but warranted that all trials, and proceedings to and returning therefrom shall be carried out within a distance by water of 100 nautical miles of the place of construction or held covered at a rate to be arranged. * * *

"This Insurance also specially to cover loss of or damage to the hull or machinery, through negligence of Master, Mariners, Engineers or pilots, or through explosions, bursting of boilers, breakage of shafts, or through any latent defect in the Machinery, or Hull, or from explosions or other causes, arising either on shore or otherwise, causing loss of or injury to the property hereby insured, provided such loss or damage has not resulted from want of due diligence by the Owners of the Ship or any of them, or by the Manager, and to cover all risks incidental to steam navigation, or in graving docks."

On May 6, 1930, in consideration of an additional premium, the insurance was extended to cover one trip from the yard in Brooklyn "via any port or place to Syracuse, N. Y. sailing on or about May 6th, 1930 against the perils covered by this policy." On May 16th, for another premium paid, it was extended to cover "this vessel whilst at Brooklyn, N. Y., and/or Syracuse, N. Y., and that this policy is extended for a further period of one month, or until June 12th, 1930, noon."

■■■ This basic form and its indorsements and riders are to be read together and construed liberally so as to indemnify the insured. If there is a provision of application to any risk where the assured has suffered loss, then they are entitled to recover. Ætna Ins. Co. v. Houston Co., 49 F.(2d) 121 (C. C. A. 5); Wright v. Ætna Co., 10 F.(2d) 281, 46 A. L. R. 225 (C. C. A. 3); Atlantic Basin Iron Works v. Amer. Ins. Co., 250 N. Y. 322, 165 N. E. 463; Underwood v. Globe Indemnity

Co., 245 N. Y. 111, 156 N. E. 632, 54 A. L. R. 485. Ambiguous clauses, which may be read in different ways so that on one construction there may be valid insurance protection and on the other no protection must be construed favorably to the insured. The J. L. Luckenbach, 65 F.(2d) 570 (C. C. A. 2); Rogers v. Ætna Ins. Co., 95 F. 103, 106 (C. C. A. 2); Marine Ins. Co. v. McLanahan, 290 F. 685 (C. C. A. 4).

██ The risk insured against was not confined to the risk of building the boat, launching it, and giving it one trial. While such clauses are included in the policy and so it may be called a builders' risk policy, still it is clear enough that the clauses extended beyond one trial. The intention that risk from an explosion was included is plain. The policy referred to "navigation and use" and stated that "all risks incidental to steam navigation" are among the risks covered. A builders' risk policy in general use is liberal in its phrasing and represents the nearest approach to full protection. Huebner, Marine Insurance (1920) c. XIII. pp. 144, 145; Dover, A Hand Book to Marine Insurance (1929) pp. 397–399; Ira S. Bushey & Sons v. Amer. Ins. Co., 237 N. Y. 24, 142 N. E. 340.

The appellants were the owners of the vessel, and it is clear that they intended, as such, to insure during the period of construction and thereafter, covering at least trial trips as such. The appellee was informed that the vessel was completed in January and that it was going to Syracuse and its navigation there was to be covered. It was granted the same insurance risks while in Syracuse that it had while in Brooklyn. The use of the clause prohibiting other insurance, coupled with the general fire, theft, and marine clause, indicated the intention of the parties that one policy was to cover all the risks common to the owner's business in connection with the boat covered. Such construction is the reasonable one and will give effect to all the clauses of the policy. The clause referring to the trial trips reads "with leave to sail * * * and to go on trial trips," indicating that the trial trips were an additional risk coverage and not an exclusive or restricted coverage. This was indicated by the clause covering trial trips which has been quoted, and which covered the vessel for a distance of 100 nautical miles to the trial course. The mileage from Brewerton to Ithaca was less than the allowed distance. No limitation or condition was placed upon the use of the boat while she was proceeding on the trial course. Nothing in the policy prevented the owner taking the boat the 60 miles from Brewerton to Ithaca and commencing and conducting its trial there. Before leaving Brewerton, it was determined to undertake this trip to Ithaca as a trial.

Below it was held that the policy covered trial trips and that this was not such a trip; that from Brewerton to Baldwinsville was a trial trip, but beyond that the vessel was not protected by the policy. The trip started at Brewerton; it was intended to pass by the entrance to Syracuse and go beyond Baldwinsville. The uses made of the boat were well within the privileges reasonably afforded the owner in making such trial trip.

We are referred to correspondence between the appellant and the Cornell Regatta Committee, to whom the appellants supplied the 36-footer as the referees' boat for the races, but nothing in this correspondence disputes appellants' claim that the No. 304 was on a trial trip when she went to Ithaca. Nor was it being used for demonstration purposes. The trip was undertaken to try out the repairs made at Brewerton for stranding damage, and was just as much a trial trip, covered by the policy, as was the trip when the vessel was first launched.

Judgment reversed.