ATLANTIC LIGHTERAGE CORPORA-
TION v. CONTINENTAL INS. CO. OF
CITY OF NEW YORK.

No. 13938.

District Court, E. D. New York.

June 6, 1934.

Purdy & Purdy, of New York City (Edmund F. Lamb, of New York City, of counsel), for libelant.

Tompkins, Boal & Tompkins, of New York City (Arthur M. Boal, of New York City, of counsel), for respondent.

BYERS, District Judge.

In this cause in personam, the libelant seeks to recover from its insurer the amount which it has paid in settlement of personal injury claims, and incurred for counsel fees, in connection with damage to the covered barge Harry in tow of the tug Dixie, as stated in (C. C. A.) 57 F.(2d) 184.

The claims were made by Mrs. Turner, wife of the captain of the Harry, and by him for her medical expense, etc., as the alleged result of the striking of the barge by the Herkimer. Both the latter vessel and the Dixie were held at fault in the collision cause.

This respondent insured the owner of the Dixie under a protection and indemnity policy No. C 1002, and the question for decision is whether the personal injury claims, and the counsel fee incurred in connection therewith, are within the engagements of the policy.

The latter, among many other undertakings, covers:

"(1) Liability for loss of life of, or personal injury to, or illness of, any person, excluding, however, *unless otherwise agreed by endorsement hereon,*"

Then follow fourteen numbered paragraphs of various exclusions, which have no present application.

Then follow a large number of "General Conditions and/or Limitations," which do not affect the controversy.

Following the above, and in heavy type, there are set forth five separate paragraphs, under this heading:

"Notwithstanding the foregoing, no liability attaches to the Assurers:"

" * * * (not applicable)

"For any loss, damage, expense, or claim arising out of or having relation to the towage of any other vessel or craft, whether under agreement or not, unless such towage was to assist such other vessel or craft in distress to a port or place of safety, provided, however, that this clause shall not apply to claims under this policy for loss of life or personal injury to passengers and/or members of the crew of the Assured's above named vessel arising as a result of towing, subject, however, to amount deductible under this policy.

" * * * (not applicable)."

The tug Dixie is a named vessel, not the barge Harry.

There is inserted below in type, i. e., a rider, as follows: "For any claim in respect of Tower's Liability."

The question seems not to have been previously decided.

130

Mrs. Turner was not a passenger on the Dixie, so that the proviso limiting the exclusion above quoted did not operate in her favor. It seems equally clear that the claim for her personal injuries arose out of the towage of the Harry by the Dixie, for the latter had the barge in tow when the Herkimer collided with the latter.

It is argued for the libelant that the matter cannot be so decided, because the quoted printed paragraph is inconsistent with the rider, and that the latter must prevail, and that only tower's liability in general was thereby lifted out of the policy. If this is so, the further argument is, that personal injury claims are not included in tower's liability, and hence Mrs. Turner's claim falls within the general coverage of the policy.

If the rider can fairly be construed as a substitute for the printed paragraph, the argument is sound. The language employed does not lend itself to this interpretation, for the reason that tower's liability ordinarily does not embrace claims for personal injury, according to the testimony of the only witness called; therefore a clause which expressly includes liability for personal injury arising out of towage of a vessel in distress to a place of safety involves an engagement which would not ordinarily attach to a tower; consequently the addition of the rider, which excludes any claim in respect of tower's liability, is not the introduction of a broader exemption for a more limited one, but the addition of a restriction which does not affect the printed obligation.

Stated differently, the rider and the printed paragraph can be construed together, and effect can be given to each, which is a desirable result. If possible, the construction must favor the insured. See Wheeler v. Ætna Ins. Co. (C. C. A.) 68 F.(2d) 30, at page 31, and cases cited.

Here, if a personal injury claim had arisen out of the towage by the Dixie, while she was assisting the Harry, or any other vessel in distress, to a place of safety, the exclusion from the general coverage would not have applied, and the company would be called upon to pay. On the other hand, a personal injury claim, incident to or arising from the conventional towage relation, is thought to have been excluded by the terms of the policy, and any other claim labeled "tower's liability" is excluded by the rider.

If the foregoing is sound, the rider did not act as a substitute for the printed paragraph which has been quoted; it merely added an exclusion not contained in the printed form. The latter must be construed so as not to admit Mrs. Turner's claim to the policy in virtue of the printed provisions above quoted.

The remaining question is whether the respondent in effect is estopped to deny its liability to the libelant for the amount paid by the latter in settlement of the claims and which it has incurred by way of counsel fee.

The facts upon this branch of the case are as follows:

According to the policy, the insured is obligated to give prompt notice of claim and to forward to the United States P. & I. Agency all communications, processes, pleadings, etc., relating thereto. It is provided that that agency acts for the respondent company in all matters arising under the policy.

The libelant is forbidden to make any admission of liability or to interfere in negotiations for settlement and agrees to assist in securing information, evidence, witnesses, etc.

Further, the respondent is not liable for the cost or expense "of prosecuting or defending any suit unless the same shall have been incurred with the written consent of the United States P. & I. Agency, Inc., or the Assurers shall be satisfied that such approval could not have been obtained under the circumstances without unreasonable delay, or that such costs and charges were reasonably and properly incurred. The cost and expense of prosecuting any claim in which the Assurers shall have an interest by subrogation or otherwise, shall be divided between the Assured and the Assurers, proportionately to the amounts which they would be entitled to receive respectively, if the suit should be successful.

"The cost of defending any suit against the Assured on any claim based on a liability or an alleged liability of the Assured covered by this insurance, shall be payable by the Assurers if the amount of the claim and the costs and expenses of the defense exceeds the amount deductible under this policy. * * * "

The summons and complaint in the State Court action were served on the libelant prior to October 19, 1931, for on that date the pleadings were forwarded to the respondent by the New York Marine Company, an assured named in the said policy, accompanied by a letter, which is Libelant's Exhibit 3, addressed to the United States P. & I. Agency, Inc., and which referred to the collision hereinbefore referred to, and continued:

"We enclose three summonses and complaints served on us today in an action started

by Gladys Turner and Willard Turner against the tug 'Dixie' and the steamer 'Herkimer' claiming $25,000 for personal injuries alleged to have been sustained in the above accident. "* * *

"This claim is covered under policy No. C-1022 (corrected in pencil to read C-1002) of the Continental Insurance Company. Please give these summonses and complaints the necessary attention."

On October 21, 1931, the United States P. & I. Agency, Inc., replied (Libelant's Exhibit 4):

"United States P. & I. Agency, Inc.
"116 John Street, New York, N. Y.
                    "Oct. 21, 1931
                    "File 6348
"New York Marine Co., 17 Battery Place, New York City.
"Att: Mr. Albert H. Hastorf, Oper.
            Vice-President.
"Tug Dixie—alleged personal injuries to Willard Turner, Captain of barge Harry and his wife, Gladys Turner—5/28/30.
"Suit for $25,000.00—Supreme Court of the State of New York, County of New York.

"Gentlemen: This will acknowledge receipt of your letter dated October 19th, submitting three summonses and complaints in an action started by attorneys Friedman and Friedman on behalf of their clients, Gladys Turner and Willard Turner, for alleged personal injuries said to have been sustained by Gladys Turner as a result of a collision between the ss Herkimer and the barge Harry—the latter being in tow of the tug Dixie on May 29th, 1930.

"In view of the fact that Messrs. Purdy & Purdy appeared for you in an action brought by the owner of the barge Harry for damages to that craft, in which the tug Dixie was exonerated, and because of Messrs. Purdy & Purdy's familiarity with the case, we suggest that the defense of the action brought by Gladys Turner and Willard Turner be placed in the hands of Messrs. Purdy & Purdy on behalf of the tug Dixie and/or underwriters, as their interests may appear.

"Therefore, we are returning the summonses and complaints with the request that you refer same to Messrs. Purdy & Purdy.

"Incidentally, the statement obtained from Gladys Turner, copy of which accompanied your letter of October 19th, makes no mention of any personal injuries, and refers only to the collision between the Munson steamer and the barge Harry, and the signals given by the tug Dixie prior thereto. The nature of the alleged injuries is not disclosed in the complaint attached to the summons, and we should be glad to be advised whether any previous claim was made, or whether you were aware of any injuries having been sustained by the complainant.

"We shall be glad to have Messrs. Purdy & Purdy's opinion and recommendations in the matter after they have had an opportunity to review the case.

"Very truly yours,
        "United States P. & I. Agency, Inc.,
                "By S. E. Boughton
"ENC.            "Asst. General Manager."

Libelant's Exhibit 6 is a letter written by Purdy & Purdy, Esqs., to the United States P. & I. Agency on October 26, 1931, reading as follows:

                "Purdy & Purdy
                "Counselors at Law
                "80 Broad Street
                    "New York           :..
                        "October 26th, 1931.
"#3986
"Gladys Turner and Willard Turner vs. New York Canal & Great Lakes Corp. and Others, including National Chartering Corporation and Atlantic Lighterage Corporation.
"United States P. & I. Agency, 116 John Street, New York City.
"Att: Mr. S. E. Boughton, Assistant General Manager. Your File No. 6348.

"Gentlemen: This will acknowledge receipt of copy of your letter, dated October 21, 1931, to the New York Marine Company, owners of the steamtug 'Dixie', which was forwarded to us by the New York Marine Company, together with the summonses and complaints served upon the National Chartering Corporation and the Atlantic Lighterage Corporation, in that matter.

"We understand, the 'Dixie,' at the time of the accident, was owned by the New York Marine Company, and was being operated by the Atlantic Lighterage Corporation, both of whom you covered by your policy. The New York Marine Company has not been sued in this action.

"The plaintiffs' attorneys have joined as a defendant, the Dixie Company Inc., which, apparently, owned the boat at one time. After they discover their error, they may join the New York Marine Company, as supplemental defendant, but we will not worry about that until some action is taken on behalf of the plaintiff to do so.

"We are preparing our answers at the present time, admitting that the Atlantic

Lighterage Corporation operated the 'Dixie' at the time of the accident, and denying all the allegations in the complaint, alleging fault on the part of the Atlantic Lighterage Corporation, or on the part of the 'Dixie.'

"This action involves the same collision as the case of William Soeller, owner of the barge 'Harry' against the tug 'Dixie' and the propeller 'Herkimer', which was tried in the United States District Court for the Eastern District of New York, before Judge Campbell, some time ago.

"Judge Campbell, in deciding the case, exonerated the tug 'Dixie' from blame, and held the 'Herkimer' solely at fault for the collision. A decree was entered accordingly and an appeal has recently been taken by the owners of the 'Herkimer,' from the decision. This appeal should be heard in the Circuit Court of Appeals for this Circuit, in approximately three months.

"We shall set up as a separate defense in our action, the decree of the District Court in the Soeller case. Of course, that decree is not res adjudicata as between Turner and the owners of the 'Herkimer,' but we believe it is res adjudicata as between the defendants whom we represent, and the 'Herkimer,' which are both defendants in the instant case.

"We shall keep you advised of further developments in the matter.
"Very truly yours,
"WFP:F        "Purdy & Purdy."

Libelant's Exhibit 7 is a letter from the United States P. & I. Agency, Inc., written to Purdy & Purdy, Esqs., on January 27, 1932, as follows:

"United States P. & I. Agency, Inc.
"116 John Street, New York, N. Y.
            "Jan. 27, 1932
            "File 6348
"Messrs. Purdy & Purdy, #80 Broad Street, New York City.
"Tug 'Dixie'—Gladys Turner and Willard Turner vs. New York Canal & Great Lakes Corporation and others including National Chartering Corporation and Atlantic Lighterage Corporation. Your 3986.
"Gentlemen: We refer to your letter dated October 26th, 1931 and would appreciate your advising whether there have been any further developments in the above-entitled matter since that time.
"Also, will you please advise whether the appeal taken by the owners of the 'Herkimer' in an action involving the same collision, has

been heard, and if so, the result of that action.
"Yours very truly,
"United States P. & I. Agency, Inc.
"By: S. E. Boughton
"Assistant General Manager."

Libelant's Exhibit 8 is the reply, reading as follows:
            "January 29th, 1932
"#3986
"Gladys Turner and Willard Turner vs. New York Canal & Great Lakes Corp. and others including National Chartering Corp. and Atlantic Lighterage Corp.
"United States P. & I. Agency, 116 John Street, New York City.
"Att: Mr. S. E. Boughton, Assistant General Manager. Your file #6348
"Gentlemen: In reply to yours of the 27th inst., inquiring about the status of the above entitled action.
"There has not been any further developments in this case since our last letter to you, dated October 26th, 1931.
"The appeal taken by the owners of the 'Herkimer,' in the action involving the same collision has not yet been heard. The owners of the 'Herkimer' have filed their record and the case will likely be heard in the Circuit Court of Appeals for this District in about three months. We shall keep you advised of further developments in this matter.
"Yours very truly,
"AJF:MP
        [No signature on carbon copy.]"

In March of 1932, the attorneys sent a bill to the United States P. & I. Agency for a retaining fee, which brought forth the following letter (Libelant's Exhibit 9) from the United States P. & I. Agency to the New York Marine Company:

"United States P. & I. Agency, Inc.
"116 John Street, New York, N. Y.
            "March 11, 1932
            "File 6348
"New York Marine Company, 17 Battery Place, New York City
"Att: Albert H. Hastorf Jr., Oper. Vice-President
"Tug 'Dixie'—Gladys Turner & Willard Turner vs. New York Canal & Great Lakes Corporation and others including National Chartering Corporation and Atlantic Lighterage Corporation. Your A–211.
"Gentlemen: Referring further to your letter dated Oct. 19th, 1931, we are just in re-

ceipt of the attached bill dated March 7th, 1932 from Messrs. Purdy & Purdy covering retainer in the sum of $250.00.

"Since this action was first reported by your letter of Oct. 19th, 1931, a question has arisen as to whether the matter is within the coverage of Continental Insurance Company Policy P&I C-1002, in view of the following clause quoted therefrom:

" 'Notwithstanding the foregoing, no liability attaches to the assurers for any loss, damage, expense or claim arising out of or having relation to the towage of any other vessel or craft whether under agreement or not, unless such towage was to assist such other vessel or craft in distress to a port or place of safety provided, however, that this clause shall not apply to claims under this policy for loss of life or personal injury to passengers and/or members of the crew of the assured's above-named vessel arising as a result of towing, subject however to amount deductible under this policy.'

"It appears that neither Gladys Turner nor Willard Turner was a passenger or member of the crew of the tug Dixie, but were on board the barge Harry of which Willard Turner was Captain.

"Our interest in the matter, of course, is without prejudice and subject to the terms and conditions of the policy, and as the action appears to be one not covered by the policy, the fees of Messrs. Purdy & Purdy would be for your own account.

"Yours very truly,
"United States P. & I. Agency Inc.,
"By: S. E. Boughton,
"Asst. General Manager."

The record is silent as to any further correspondence between any of the parties until April 18, 1933, when the libelant wrote to the United States P. & I. Agency enclosing general releases obtained from Gladys Turner and Willard Turner, consummating a settlement of the said action for personal injuries, and copy of the bill of Messrs. Purdy & Purdy, and the letter concluded as follows:

"This claim was covered under your Policy No. C-1002 of the Continental Insurance Company and we would, therefore, thank you to let us have your check for $1,113.65 to reimburse us for the above payment."

On April 20, 1933, a reply was written referring to the above letter of March 11, 1932, and concluding: "in view of which we are obliged to decline your claim and return the papers herewith."

It is urged that the respondent company has brought itself within the cases which hold that an insurer is estopped to deny liability under such a policy as this, where it has taken exclusive charge of the defense of such a claim with the consent of the assured, and that there is such a rule does not admit of doubt. General Tire Co. v. Standard Acc. Ins. Co. (C. C. A.) 65 F.(2d) 237; Empire State Surety Co. v. Pacific National Lumber Co. (C. C. A.) 200 F. 224; Employers' Liability Assur. Corp. v. Chicago & B. M. C. & C. Co. (C. C. A.) 141 F. 962; Meyers v. Continental Casualty Co. (C. C. A.) 12 F.(2d) 52, and cases cited, particularly in the latter opinion.

In all of the foregoing cases, something more was done by the insurance company than appears from the foregoing correspondence; that is to say, the company actually conducted the defense of the action brought against the insured and then sought to evade liability for an adverse determination.

It cannot be said that this respondent assumed control of the Turner case to the same extent as is found in the cases cited, but its conduct was calculated to create on the part of the libelant a belief that liability was not disclaimed. In the letter first above quoted, transmitting the pleadings to the United States P. & I. Agency, the assertion is made unequivocally that the claim is covered by the policy in question, and, if it had been the then view of the United States P. & I. Agency that the claim was not covered, fair dealing required an equally clear statement to that effect. No such statement was made.

If the insurance company did not propose to concern itself with the litigation, it had no right to suggest the names of attorneys to conduct it on behalf of the defendants. That the United States P. & I. Agency did not then deem the question of coverage of importance appears from the letter of March 11, 1932 (Libelant's Exhibit 9 above quoted) wherein it is said: "Since this action was first reported by your letter of Oct. 19th, 1931, a question has arisen as to whether the matter is within the coverage, etc."

The agency does not state when the question arose, but a fair regard for its duties to its insured would suggest that as soon as the question did arise, it should have been presented to the libelant.

When the summons and complaint in the Turner action were served, the libelant had the legal right to endeavor to adjust that action without consulting attorneys or incurring charges for professional advice, and it forwarded the pleadings in accordance with the

provisions of the policy touching that subject and, instead of being frankly informed at that time that the respondent would disclaim liability under the policy, an adroitly worded letter was written, first suggesting that the matter be placed in the hands of Messrs. Purdy & Purdy "on behalf of the tug Dixie and/or underwriters, as their interests may appear," and then *requesting* that the pleadings be referred to those attorneys.

That was such an assumption of participation in the defense of the action that the libelant was justified is relying upon it, and the requirements of good faith cannot now be met by permitting the respondent to escape responsibility for a situation which it created.

It appears that the Turner case was settled by the libelant after knowledge that the respondent disclaimed liability under the policy and, as it is the view of this court that such disclaimer was legally justified, the libelant cannot recover the amount which it paid in settlement; but, as the libelant incurred the bill of Messrs. Purdy & Purdy in reliance upon the request of the respondent, their charges for handling the matter should be borne by the respondent, and a decree may be entered to that effect, with costs, to be settled on notice.

If findings are desired, they may be settled at the same time, and are to embody appropriate recitals as to ownership and incorporation.